UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SAMANTHA CORBIN, an individual,

        Plaintiff,

        v.

RUSSELL PALMERI; CLACKAMAS CO
SHERIFF'S OFFICE SERGEANT DOE; DOES 1-
4; DANIEL HILL; ANGELA BRANDENBURG;
JASON DAVIES; AND NATE HULSEY,

        Defendants.

Case No. 3:25-cv-01012-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff is the owner of a single-family home in Clackamas County. They[1] live with one

adult tenant and two foster children under the legal custody of the Oregon Department of Human

Services Child Welfare Program. Plaintiff claims that an attempted robbery occurred at their

residence and the Clackamas County Sheriff's Office ("CCSO") intentionally discriminated

against them by failing to conduct an adequate investigation due to their sexual orientation and

the sexual orientation of the foster children.

---

[1] Plaintiff is non-binary and uses they/them pronouns.

1 – OPINION AND ORDER

Plaintiff has brought a 42 U.S.C. § 1983 claim against CCSO Deputy Russell Palmeri, an unidentified Sergeant Doe ("Palmieri's Sergeant"), Supervising Sergeant Daniel Hill, Lieutenant Nate Hulsey, Lieutenant Jason Davies, Sheriff Angela Brandenburg, and Does 1-4, who are members of the CCSO's Professional Standards Unit ("CCSO PSU"). Am. Compl. ECF 17. Plaintiff alleges violations of their Fourteenth Amendment due process and equal protection rights, as well as their rights under Article 1, section 20, of the Oregon Constitution. *Id.* ¶ 45-78.

Defendants filed a Motion to Dismiss the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss, ECF 5. A hearing was held on November 13, 2025, at which the merits of the motion were discussed and the court granted plaintiff's informal motion to file an amended complaint. Plaintiff has filed an Amended Complaint (ECF 17) and defendants have filed a second Motion to Dismiss (ECF 18). Because Plaintiff's Amended Complaint still fails to state a claim for relief, the motion to dismiss is granted and this case is dismissed.

## I.    Legal Standards

### A.    Motion to Dismiss Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient facts to "state a claim to relief that is plausible on its face," such that the court can reasonably infer the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the plausibility of the complaint, the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Capp v. Cty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). However, the court is not required to accept as true allegations "that are

merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal citation omitted). A complaint must be dismissed for failure to state a claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (internal quotation omitted).

B.    **42 U.S.C. § 1983**

42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citation and quotation marks omitted). Section 1983 liability "arises only upon a showing of personal participation by the defendant" who, acting under color of state law, deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); 42 U.S.C. § 1983. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

II.    **Discussion**

Defendants contend that plaintiff (1) fails to establish a violation of a substantive due process right[2]; (2) cannot demonstrate an equal protection claim based on discriminatory intent; (3) does not adequately allege supervisory liability; (4) fails to show personal participation by the

---

[2] Defendants assume plaintiff's purported due process claim to be a substantive due process claim and plaintiff does not contend otherwise in their response. *See* Mot. Dismiss 6, ECF 18; Resp. 12-13, ECF 21.

3 – OPINION AND ORDER

unnamed defendants, Does 1-4; and (5) lacks a private right of action under the Oregon Constitution. *See* Mot. Dismiss 6–13, ECF 18.

A.       **Fourteenth Amendment Due Process Claim**

Substantive due process "protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). "Only the most egregious official conduct can be said to be arbitrary in a constitutional sense." *Id.* (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998)). Thus, to establish a substantive due process claim, a plaintiff must show (1) a government deprivation of life, liberty, or property, and (2) behavior by the government that shocks the conscience. *Id; see also Gale v. SAIF Corp.*, No. 3:18-cv-00707-AC, 2020 WL 809381, at *6 (D. Or. Jan. 3, 2020), *report and recommendation adopted*, No. 3:18-cv-00707-AC, 2020 WL 798142 (D. Or. Feb. 16, 2020).

Plaintiff alleges that on May 7, 2023, they left their house around 10:45 p.m. Am. Compl. ¶ 9, ECF 17. Shortly thereafter, one of their foster children came home. *Id.* ¶ 10. Upon entering the house, the youth heard a loud crash from his bedroom and observed that the back sliding door was open. *Id.* He went to his bedroom, where he found the window open and the screen missing. *Id.* All the "furnishings surrounding the window were displaced, [his] personal property had been moved, and the canopy over his bed was displaced[.]" *Id.* He called plaintiff, who then called the police to report an interrupted burglary. *Id.* ¶ 11.

CCSO Deputy Palmeri responded to the scene with officers from the Lake Oswego Police Department ("LOPD"). *Id.* ¶ 13. Plaintiff alleges that, as the officers walked around the house, Palmeri made dismissive statements about the youth and the household, suggesting the youth "jumped out the window himself" and referring to the residence as a "group home." *Id.* ¶ 18. When Palmeri went to the youth's bedroom, he took a few steps into the room and left

4 – OPINION AND ORDER

shortly after, stating "let's get out of here." *Id.* ¶ 20. Palmeri did not conduct further investigation and did not contact plaintiff for more information. *Id.* ¶ 21.

Plaintiff alleges that when Palmeri called plaintiff later that night, he continued to be dismissive. He insisted that it was the foster youth who had jumped out the window. *Id.* ¶ 23. Plaintiff then called police dispatch to request that a different officer be sent to the house because Palmeri "clearly didn't believe a word that my kid said." *Id.* ¶ 25. Palmeri's sergeant declined, offering to have Palmeri call again. *Id.* Palmeri called plaintiff again a couple of hours later and continued to insist that the youth jumped out the window and that the youth was "too drugged to remember." *Id.* ¶ 26

The following morning, plaintiff sent various pictures to Palmeri showing the disarray of the youth's bedroom and a muddy footprint on his bed. *Id.* ¶ 27. Despite this, nobody followed up with plaintiff. *Id.* A week later, CCSO released Palmeri's incident report, signed by Supervising Sergeant Hill. *Id.* ¶ 31. Plaintiff claims there were multiple instances of dishonesty and substandard investigatory steps in the report. *Id.* ¶ 28.

A month later, plaintiff filed a formal complaint about the investigation with CCSO. *Id.* ¶ 32. An investigator from CCSO PSU responded, stating a resolution timeline of "a minimum of 90 days." *Id.* ¶ 33. Lieutenant Hulsey later informed plaintiff that CCSO had concluded that "[Palmeri's] actions were in conformance with policy and procedure." *Id.* ¶ 37. Not satisfied, plaintiff provided Hulsey with additional information. *Id.* ¶ 38. Plaintiff followed up with Hulsey twice over the next few months but received no further acknowledgment. *Id.*

Two months later, plaintiff filed a complaint with the Oregon Department of Public Safety Standards and Training ("DPSST"), which was forwarded to CCSO. *Id.* ¶¶ 39-40. CCSO Sheriff Brandenburg subsequently signed a statement to DPSST, asserting that the complaint

5 – OPINION AND ORDER

"has been reviewed and handled in a manner deemed appropriate by [her] agency." *Id.* ¶ 41. On October 9, 2023, DPSST closed their investigation based on Brandenburg's signed statement. *Id.* ¶ 42. Based on these alleged facts, plaintiff claims they were deprived of protection for their life and the lives of the residents in their home because defendants did not provide the same level of protection and diligence in their investigation as they did for their non-LGBTQ neighbors. Resp. 14, ECF 21.

Plaintiff's substantive due process claim fails because an inadequate investigation does not constitute a deprivation of life, liberty, or property. The Ninth Circuit and district courts in this circuit have consistently held that there is no constitutional right to an investigation. *See Gomez v. Whitney,* 757 F.2d 1005, 1006 (9th Cir. 1985) (holding that inadequate investigation is not a sufficient basis for a civil rights claim unless another recognized constitutional right is involved); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) ("The police have no affirmative obligation to investigate a crime in a particular way[.]"); *Frisch v. City of Eugene*, No. 6:09-cv-06126-TC, 2010 WL 686754, at *3 (D. Or. Feb. 24, 2010) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *Clark v. Milwaukie Police Dep't*, No. 3:22-cv-00662-SB, 2022 WL 4473487, at *5 (D. Or. Sept. 15, 2022), *report and recommendation adopted*, No. 3:22-cv-662-SB, 2022 WL 4466942 (D. Or. Sept. 26, 2022) ("[The plaintiff] does not have a constitutionally protected right to have the police investigate his report in a particular way."); *Hendrix v. City of Madera*, No. 1:23-cv-01212-JLT-BAM, 2023 WL 5985325, at *3 (E.D. Cal. Sept. 14, 2023), *report and recommendation adopted*, No. 1:23-cv-01212-JLT-BAM, 2023 WL 7022384 (E.D. Cal. Oct. 25, 2023) ("There is no constitutional right for an adequate investigation.").

6 – OPINION AND ORDER

With respect to the second factor, plaintiff argues that the inadequate investigation was motivated by bad faith, as defendants treated plaintiff "much differently from the non-LGBTQ neighbors who were also victims of apparent burglaries." Resp. 13-14, ECF 21. Plaintiff contends this conduct shocks the conscience because the officers "treated one set of protected members of society differently and caused fear and safety issues for [the] members of the [LGBTQ] community[.]" *Id.* at 14.

But plaintiff has not alleged facts showing that Palmeri or the other defendants knew plaintiff's sexual orientation or gender identity. Plaintiff mentions that the "police officers were able to view a sign on the front door that identifies the residents as supportive of a wide range of minority groups" and that "[p]laintiff's driver's license reflects the gender marker as non-binary." Am. Compl. ¶ 8, ECF 17. Yet it is unreasonable to infer that defendants were able to determine plaintiff's sexual orientation from the sign that "police officers were able to view on the front door." Furthermore, the complaint alleges that Palmeri conducted an inadequate investigation before he met plaintiff. Certain other defendants never visited the home, further weakening plaintiff's claim. Thus, even viewing the facts in the light most favorable to plaintiff, they have failed to allege the type of arbitrary, egregious, and conscious-shocking behavior that could support a substantive due process claim.

### B.    Equal Protection Claim

The Equal Protection Clause is a guarantee that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The essence of that guarantee is that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyer v. Doe*, 457 U.S. 202, 216 (1982)). To prevail on an equal protection claim under § 1983, a plaintiff must plead and

prove either "the defendants acted with an intent or purpose to discriminate against the plaintiff based on membership in a protected class," *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)), or that the plaintiff "has been intentionally treated differently from others similarly situated and that there is no rational relationship for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

For purposeful discrimination to occur, the defendant must have knowledge of a plaintiff's identity. *See Pariseau v. City of Brockton*, 135 F. Supp. 2d 257, 263 (D. Mass. 2001) (denying a race-based discrimination due to lack of evidence that the officer knew the plaintiff's race); *Fagerstrom v. City of Savannah, Ga.*, 627 F. App'x 803, 805 (11th Cir. 2015) ("Without *knowledge* of [the plaintiff's] Asian racial identity, [the defendant] cannot have acted with an *intent* to discriminate based on that identity.") (emphasis in original); *Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992) ("Knowledge plays a role in forming or ascertaining intent. [The defendant] could not discriminate against [the plaintiff] on account of race if he did not know [the plaintiff's] race.").

Plaintiff has failed to establish that defendants acted with discriminatory intent because, again, they have not alleged that any of the defendants knew of plaintiff's or their foster youths' sexual orientation. Also, importantly, plaintiff alleges no facts showing they were treated differently from similarly situated individuals. While plaintiff mentions that "the neighborhood grapevine was reporting a recent successful burglary on . . . the cross street opposite[e] [p]laintiff's driveway" (Am. Compl. ¶ 29, ECF 17) and that a LOPD captain "confirmed that additional burglaries had been reported in the neighborhood" (*id.* ¶ 35), they fail to allege that those neighbors were treated differently. Accordingly, plaintiff's equal protection claim fails.

8 – OPINION AND ORDER

### C.      Supervisory Liability

There is no *respondeat superior* liability under § 1983. *Taylor*, 880 F.2d at 1045. Liability under § 1983 "arises only upon a showing of personal participation by the defendant." *Id.* An official may be liable as a supervisor "only if either (1) [the supervisor] was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018).

In their amended complaint, plaintiff alleges supervisory liability against Sergent Doe, Sergeant Dan Hill, Lieutenant Hulsey, Lieutenant Davies, and Sheriff Brandenburg. Am. Compl. ¶¶ 49, 51-61, ECF 17. Because plaintiff has failed to establish any underlying constitutional violation, they cannot show that the supervisory defendants were personally involved in a constitutional deprivation or that a causal connection exists. Therefore, plaintiff fails to state a viable supervisory liability claim.

### D.      Oregon Constitutional Claim

As defendants correctly contend, "there is no private right of action for damages under the Oregon Constitution." *Real Est. Exch., Inc. v. Brown*, No. 3:20-cv-02075-HZ, 2021 WL 5855660, at *8 (D. Or. Dec. 9, 2021). "Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations." *Hunter v. City of Eugene*, 309 Or. 298, 303 (1990). Therefore, plaintiff's claim seeking damages for a violation of Article 1, section 20, of the Oregon Constitution must be dismissed. *See Anderson v. Multnomah Cnty.*, No. 3:20-CV-0555-YY, 2022 WL 3219801, at *10 (D. Or. Jan. 4, 2022), *findings and recommendations adopted,* No. 3:20-CV-00555-YY, 2022 WL 2452282 (D. Or. July 6, 2022) (dismissing free speech and due process claims under the Oregon Constitution because no cause

of action exists); *Gooding v. Zuercher*, No. 3:18-CV-00015-YY, 2018 WL 4658710, at *4 (D. Or. July 23, 2018), *findings and recommendations adopted*, No. 3:18-CV-00015-YY, 2018 WL 4658828 (D. Or. Sept. 27, 2018) (dismissing claim under Article 1, section 9 of the Oregon Constitution because claims for damages may not be brought directly under the Oregon Constitution); *Calhoun v. Portland Police Bureau*, Case No. 3:17-cv-01020-MO, 2018 WL 1413969, at *3 (D. Or. Mar. 21, 2018) (dismissing with prejudice plaintiff's claims under the Oregon Constitution because no cause of action exists under *Hunter*).

## ORDER

Defendants' Motion to Dismiss (ECF 18) is granted and this case is dismissed with prejudice.

IT IS SO ORDERED.

DATED May 8, 2026.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge

10 – OPINION AND ORDER